**Date signed February 24, 2005**



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at Greenbelt

IN RE:

AUDREY YVONNE BARGESKI                         Case No. 01-18272PM
                                                              Chapter 7
        Debtor
_____/

CHERYL E. ROSE, TRUSTEE
        Plaintiff
   vs.                                                         Adversary No. 04-1432PM

ALBERT M. BARGESKI
        Defendant
        Third-Party Plaintiff
   vs.

AUDREY Y. BARGESKI (BUCKBEE)
        Third-Party Defendant
_____/

### MEMORANDUM OF DECISION

      The Plaintiff, Cheryl E. Rose, Chapter 7 Trustee, filed a Complaint pursuant to § 549(a) of the Bankruptcy Code seeking the avoidance of a transfer of Audrey Y. Bargeski's (the Debtor") interest as a tenant in common of the former marital residence of the Debtor and her former husband, the Defendant, Albert M. Bargeski (sometimes "Albert" or "Mr. Bargeski") (collectively, "the Bargeskis"),

located at 6650 Coldstream Drive, New Market, Maryland ("the Coldstream Drive property"). The case is governed by § 549 of the Bankruptcy Code, the applicable provisions of which are as follows:

**11 U.S.C. § 549.  Postpetition transactions**

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate –

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

\*     \*     \*     \*     \*     \*     \*

(c)  The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser.  A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

(d) An action or proceeding under this section may not be commenced after the earlier of –

(1) two years after the date of the transfer sought to be avoided; or

(2) the time the case is closed or dismissed.

This case involves an unfortunate combination of actions taken in good faith by Mr. Bargeski, that interacted with the harsh provisions of the Bankruptcy Code to produce the unfair result and Order that the court is compelled to enter.  He acted in ignorance of § 549(a)(2) to his detriment.  But this opinion must reflect that throughout the transaction in question Mr. Bargeski did nothing of a dishonest

or dishonorable nature. On the other hand, the Debtor departs from this bankruptcy case unscathed with her chapter 7 discharge untouched. She retains substantial amounts of non-exempt property, including jewelry. In her answer to question No. 4 of the Statement of Financial Affairs dated June 21, 2001, she perjured herself when she failed to list the lawsuit of *Bargeski v. Bargeski* in the Circuit Court for Frederick County, Maryland, filed by her on November 2, 2000. She likewise lied on the witness stand when she said that she did not know that the divorce case had been filed. Maryland Rule of Procedure 9-202(a) required that she personally sign each pleading. She signed the complaint. The court does not believe her statement that she did not know that the case had been filed. The court is likewise convinced that the Debtor lied in denying that she owned substantial items of jewelry and furniture. On the other hand, the court finds Mr. Bargeski's testimony credible in all respects.

The following numbered paragraphs paraphrase the Stipulated Facts of the parties.

(1) The Debtor and Albert, a widower, were married on November 28, 1987. In February 1988, Albert added the Debtor's name to the title of property located in Temple Hills, Maryland, that he owned prior to the marriage. The property was unencumbered. On August 28, 1989, the parties sold the Temple Hills property, clearing $141,190.54 from the sale. They then purchased real property in Martinsburg, West Virginia, that was titled as a tenancy by the entirety, sold that property, purchased property in Frederick City, Maryland, that was also held in a tenancy by the entirety, sold that property and thereafter used the proceeds to purchase the Coldstream Drive property.

(2) Shortly after the marriage, Albert retired from his employment at the National Oceanic and Atmospheric Administration, where he had worked for it and its predecessors as an oceanographer for 36 years. His pension was based upon this and two years of prior military service. The Debtor was employed throughout the marriage of the parties. These facts are significant in that under Maryland law, in the event of a divorce, the Chancellor would consider only a small portion of Albert's pension to be marital property, while a substantial portion of Audrey's property would be so considered, thereby influencing the ultimate amount of the monetary award.

(3) A second mortgage was placed on the Coldstream Drive property to secure a loan obtained from the Navy Federal Credit Union. The proceeds of this loan were used to pay off various

debts of the Debtor. The Debtor made the payments on the second mortgage until the separation of the parties.

(4) On June 26, 2001, the Debtor filed this bankruptcy case under chapter 13. Insofar as is pertinent to this case, the joint property of the parties consisted of the Coldstream Drive property, a pontoon boat, and a 1994 Toyota Camry. On November 29, 2001, the court entered an Order confirming the Debtor's Chapter 13 Plan dated November 6, 2001. The Order provided that the property of the estate shall not vest in the Debtor until the discharge of the Debtor or the dismissal of the case.

(5) On May 9, 2000, shortly before their separation, the Bargeskis bought a 1998 Mercedes automobile for the sum of $43,750.00. Financing of the purchase was accomplished through a conditional sales agreement that provided for 60 payments of $832.80 with an interest rate of 8% per annum. The vehicle was treated as the Debtor's automobile.

(6) On May 21, 2002, the parties entered into a Voluntary Separation and Property Settlement Agreement ("Agreement"). Counsel for the parties (not trial counsel) were aware of the existence of the chapter 13 bankruptcy case at the time of the execution of the Agreement. Albert was not scheduled as a creditor.

(7) In Exhibit 19, Albert's state court counsel was advised by the Debtor's state court counsel that the Coldstream Drive property was not a part of the chapter 13 bankruptcy estate. This advice was misleading.

(8) On June 26, 2002, in conjunction with the Barjeski's Agreement, the Debtor signed a Deed for the subject property conveying her interest to Albert. The Deed was recorded August 14, 2002. At about the same time as the execution of the Deed, the court finds that the parties conveyed their interests in the respective automobiles (1998 Mercedes to the Debtor and the 1994 Toyota Camry to Albert) to each other, and the pontoon boat was transferred to Albert.

(9) On November 21, 2002, on the Debtor's motion, the case was converted from a case under chapter 13 to a case under chapter 7.

(10) The Toyota Camry was sold for $2,000.00, the pontoon boat for $1,000.00.

The following facts are also pertinent. On June 26, 2003, Albert sold the Coldstream Drive property to the daughter of a neighbor for $295,000.00. It is stipulated that at the time of the sale, the property had a value of $305,000.00. Albert cleared $133,480.25 from the sale. The Debtor's Schedule of Exemptions filed with her petition claimed $2,000.00 in value of the Coldstream Drive property as exempt, together with $1,047.00 in exemptions in the pontoon boat and the Toyota Camry. No objection was filed to this Schedule of Exemptions. The court sustained the Chapter 7 Trustee's objection to the Debtor's subsequent attempt to amend her Schedule of Exemptions. Therefore, $2,000.00 of the value of the real property and the entire proceeds of the pontoon boat and the Camry were excluded from her bankruptcy estate. While Albert testified that he bought an engagement ring for the Debtor and that cost $5,000.00, the Debtor did not list this ring on her Schedule of Personal Property. The Chapter 7 Trustee has not sought to recover the ring.

The Chapter 7 Trustee seeks to recover the value of the Debtor's interest in the pontoon boat, Toyota Camry, and the Coldstream Drive property. Because the Debtor claimed her interest in the pontoon boat and the Toyota Camry as exempt, and no objection was filed to that claim, those items may not be considered property of the estate. As for the Coldstream Drive property, the Chapter 7 Trustee's action against the ultimate purchaser of the property would have been subject to the defense by that individual as a good faith purchaser under § 549(c) of the Bankruptcy Code.

Upon the entry of the Judgment of absolute divorce of the parties on July 16, 2002, the property previously owned as tenants by the entirety was converted by operation of law into a tenancy in common. *Bruce v. Dyer*, 524 A.2d 777, 781 (Md. 1987). Also, as noted above, the Order confirming the Debtor's Chapter 13 Plan provided that the property of the estate did not vest in Debtor until she was granted a discharge or the case was dismissed. Therefore, the Debtor's interest in the Coldstream Drive property remained property of the chapter 13 estate. The real property was thus conveyed by the Debtor while it was property of the bankruptcy estate.

Under § 348(f)(1)(A) of the Bankruptcy Code, the property of the estate in a converted case consists of the property of the estate as of the date of the filing of the petition remaining in the possession of the debtor at the time of conversion. The plain meaning of this section might seem to exclude from the property coming under the trustee's dominion that property that was transferred

contrary to law.  This is because the trustee's powers to avoid postpetition transfers is limited to transfers of property of the estate.  But such a construction would lead to an absurd result that compels departure from the seemingly plain meaning of the section.  *Cf. Maryland Department of Education v. U.S. Department of Veterans Affairs,* 98 F.3d 165, 169 (CA4 1996).  As explained in *Collier's on Bankruptcy*, ¶348.07 (15th Ed. Rev. 2004), the addition of § 348(f) by the Bankruptcy Reform Act of 1994 was to clarify the law so as to protect property acquired by the debtor during the pre-conversion chapter 13 case and to eliminate a serious disincentive to chapter 13 filings.  H.R. REP. 103-184 at 42-43 (1994); s*ee In re Young*, 66 F.3d 376 (CA1 1995).  Were the 1994 amendment construed otherwise, it would lead to the mother of all bankruptcy abuses.  A debtor files a case under chapter 13, disposes of valuable property prior to converting to a case under chapter 7 and then thumbs her nose at creditors following conversion.  But § 549(a) enables the trustee to avoid such unauthorized transfers made while the case remained under chapter 13.

After avoidance of the transfer, Albert would then have a claim pursuant to § 502(h) of the Bankruptcy Code against the estate for the amount that he paid for the Debtor's share of the real property.  The next issue involves the issue of quantifying the recovery of the value of the property recovered as a result of the avoidance.  11 U.S.C. § 550(a).  In a recent case, the Tenth Circuit rejected the Trustee's argument that the bankruptcy estate should recover the appreciated value of the asset transferred.  The court noted:

> Our own review of fraudulent transfer cases has revealed no such general rule, however, particularly where the property in question has, as here, appreciated since the time of the transfer.  The cases cited by *In re Colonial* and by the appellants in support of this rule all deal with instances where the transferred property had *decreased* in value since the time of the transfer.  *See Kepler v. Sec. Pac. Hous. Servs. (In re McLaughlin*), 183 B.R. 171, 176-77 (Bankr. W.D. Wis. 1995); *Shape, Inc. v. Midwest Eng'g (In re Shape, Inc.*), 176 B.R. 1, 3 (Bankr. D. Me. 1994); *Official Creditors Comm. v. Agri Dairy Prods, Inc.* (*In re James B. Downing & Co.),* 74 B.R. 906, 911 & n. 6 (Bankr N.D. Ill. 1987).  The rationale behind the rule in those cases is to avoid the inequity *to the bankruptcy estate* that would result if the court ordered the return of the actual property at issue.  *See Tidwell v. Chrysler Credit Corp. (In re Blackburn*), 90 B.R. 569, 573 (Bankr. M.D. Ga. 1987) ("Because of the depreciable nature of the property involved [here], the Court finds that Trustee is entitled to recover the value of the property at the time of transfer.").  As the *In re*

> *Colonial* court recognized, "'the proper focus in [§ 550(a)] actions is not on what the transferee gained by the transaction, but rather on what the bankruptcy estate lost as a result of the transfer.'" *In re Colonial Realty Co.*, 226 B.R. at 525 (quoting *Gill v. Maddalena (In re Maddalena)*, 176 B.R. 551, 557 (Bankr. C.D. Cal. 1995)). Rather than *In re Colonial's* rule, we believe the only generally applicable rule in regard to § 550(a) valuation is that "the time at which the value is measured depends upon the circumstances of each individual case." *Pitchard v. Brown (In re Brown)*, 118 B.R. 57, 60 (Bankr. N.D. Tex. 1990) (quoting *In re Blackburn*, 90 B.R. at 573 (citing 4 Collier on Bankruptcy ¶ 550.02 n. 6 (15th ed. 1987))).

*In re Integra Realty Resources, Inc.*, 354 F.3d, 1246, 1267 (CA10 2004). The court is spared exploration of this issue by the Stipulation.

This leads the court to an interesting speculation. What happens if the clock is turned back? One begins with the strong public policy of Maryland expressed by legislature and courts favoring settlement of disputes, particularly involving family matters. The beginning premise is, of course, that the divorce court is expressly forbidden to transfer ownership of personal or real property from one party to another. *Nisos v. Nisos*, 483 A.2d 97 (Md. App. 1984); *Watson v. Watson*, 551 A.2d 505 ( Md. App. 1989); *Lemley v. Lemley*, 649 A.2d 1119, 1134 ( Md. App. 1994). However, this rule does not bar the Chancellor from considering the source of funds to determine what is and what is not marital property. In making this monetary award, the court need not look to legalistic concepts of title, as explained in *Grant v. Zick*, 477 A.2d 1163, 1171 (Md. 1984) ("[W]e now hold that when characterizing property as marital or nonmarital under § 3-6A-05(a), for the purpose of granting a monetary award under § 3-6A-05(b), a presumption of gift does not arise from the titling of property as tenants by the entirety.").

Thus, Albert had a meritorious basis for asserting that a substantial portion of the equity in the Coldstream Drive property was not marital property, tracing that equity to the property owned by him prior to the parties marriage. Furthermore, as pointed out above, almost all of Albert's pension was not marital property. However, under the "Bangs formula" used by Maryland courts in determining the marital portion of pension assets, as noted above, a substantial segment of the Debtor's pension was

-7-

marital property and subject to a monetary award.[1]  Finally, following the separation of the parties, Albert made substantial payments on the obligation secured by liens on the Coldstream Drive property for which he had a claim for contribution from the Debtor upon sale.

In all likelihood had that divorce case gone to trial, Albert would have emerged with a substantial monetary award.  The parties must have recognized this and entered into the Settlement Agreement that they did.  The Debtor got everything that she was entitled to under the Agreement.  What Albert got was this action by the Chapter 7 Trustee.  If this were a fair world, Albert would win.  However, fairness has little to do with the situation at hand.

The court finds that the Trustee is entitled to recover from Albert a judgment in the sum of $152,500.00, minus a sum equivalent to one-half of the liens secured by the subject property as of June 26, 2002.  Counsel for the Trustee shall submit an appropriate order.

cc:
James M. Hoffman, Esq., 11921 Rockville Pike, Rockville, MD 20852
Harry T. deMoll, Esq., 129 West Patrick Street, Unite 3, Frederick, MD 21701
Laura J. Margulies, Esq., 6205 Executive Blvd., Rockville, MD 20852

**End of Memorandum**

---

[1] The "Bangs formula" is used by Maryland courts to calculate the marital portion of a pension for the purposes of valuation upon divorce. *See, Potts v. Potts*, 790 A.2d 703, 718-719 (Md App. 2002).